## UNITED STATES

v.

Private (E–2) Johnie C. MABRY, 425–04–3867, US Army, Company C, 1st Battalion (Mechanized), 50th Infantry, 2d Armored Division, Fort Hood, Texas.

CM 433433.

U. S. Army Court of Military Review.

Sentence Adjudged 6 May 1975.

Decided 29 Oct. 1975.

Appearances: Appellate counsel for the Accused: CPT J. D. Miller, JAGC; CPT Sammy S. Knight, JAGC; MAJ Richard J. Goddard, JAGC; COL Alton H. Harvey, JAGC. Appellate counsel for the United States: CPT John F. DePue, JAGC; CPT Joel M. Martel, JAGC; MAJ John T. Sherwood, Jr., JAGC; LTC Donald W. Hansen, JAGC.

## OPINION OF THE COURT

DeFORD, Judge:

At trial by general court-martial before military judge alone, the appellant pleaded not guilty to involuntary manslaughter (Charge I) and three specifications of drunken driving (Charge II) in violation of Articles 119 and 111, Uniform Code of Military Justice, 10 U.S.C. § 919 and 10 U.S.C. § 911.

He was found guilty of involuntary manslaughter and, by exceptions, reckless driving and received an approved sentence as described above.

The appellant through counsel, assigns as error among others, that:

THE THREE SPECIFICATIONS OF CHARGE II [RECKLESS DRIVING] ARE MULTIPLICIOUS WITH THE SPECIFICATION OF CHARGE I [INVOLUNTARY MANSLAUGHTER] FOR SENTENCING PURPOSES IN THAT THEY ALL AROSE FROM A SINGLE INTEGRATED TRANSACTION. . . THIS ERROR WAS COMPOUNDED BY THE FAILURE OF THE STAFF JUDGE ADVOCATE TO SO ADVISE THE CONVENING AUTHORITY.

The issue of multiplicity for sentence purposes was not raised at the trial level. The record reflects the following sequence of events which occurred at Ford Hood, Texas. During the late evening hours of 31 October 1974, the appellant departed the Sabre Club by automobile, with Private First Class Roberson and Private Ross as passengers, en route to his barracks. The weather was foggy.

The appellant proceeded east on Battalion Avenue and, as he approached the intersection of that Avenue and 47th Street, he increased the speed of his vehicle to at least 60 miles per hour. The speed limit in this area was 30 miles per hour. The intersection mentioned above was controlled by a traffic control signal which was visible to the appellant and which turned red as the appellant approached that intersection. The appellant's vehicle proceeded into the intersection in violation of the red traffic control signal and collided with another automobile driven by one Lewis in which Specialist Four Richardson was a passenger.

As a result of the collision, Private Ross, a passenger in the appellant's vehicle, was killed and the remaining occupants of the vehicles were severely injured.

Paragraph 76a(5) of the Manual for Courts-Martial, United States, 1969 (Revised edition) provides:

.        .        .        .        .

"(5) The maximum authorized punishment may be imposed for each of two or more separate offenses arising out of the same act or transaction. If one offense is included in the other, the offenses are not separate. Also, the general rule is that offenses are not separate unless each requires proof of an element not required to prove the other. For example, if an accused is convicted of escape from confinement (Art. 95) and desertion (Art. 85) which both arose out of the same act or transaction, the court may legally adjudge the maximum punishment authorized for each offense because an intent to remain permanently absent is not a necessary element of the offense of escape, and a freeing from restraint is not a necessary element of the offense of desertion; but if, in this example, the accused had been convicted of absence without leave instead of desertion, he could not be separately punished for the two offenses because absence without leave does not require proof of any element not also required to prove the escape.

Care must be exercised in applying the general rule stated in the above paragraph as there are other rules which may be applicable, with the result that in some instances a final determination of whether two offenses are separate can be made only after a study of the circumstances involved in the individual case. The following are examples of rules under which offenses may not be separate although each offense requires proof of an element not required to prove the other:

*(a) When the intent for each of several offenses is to be inferred from the same fact.*

*Example:* An accused is convicted of desertion by an absence with an intent to remain away permanently (Art. 85(a)(1)) and also of desertion by quitting his organization with intent to shirk important service (Art. 85(a)(2)), as the result of one absence. If the intent for each offense is to be inferred from the fact that the accused failed to comply with orders for overseas shipment, the offenses are not separate.

*(b) When two offenses are committed as the result of a single impulse or intent.*

*Example:* An accused is convicted of unlawfully opening mail matter (Art. 134) and larceny (Art. 121) therefrom. If he opened the mail bag for the purpose of stealing money contained in a letter in the bag, the offenses would not be separate.

The following are examples of rules which establish that offenses are separate whether or not each offense requires proof of an element not required to prove the other:

*(a) When the offenses involve violations of different social standards.*

*Example:* An accused is convicted of robbery (Art. 122) and conspiracy (Art. 81) to commit the same robbery. Even if the overt act set forth in the conspiracy is the consummated robbery, the offenses are separate. See 160.

*(b) When the offenses involve the breach of separate duties.*

*Example:* An accused is convicted of misbehavior before the enemy through cowardly conduct in wrongfully failing to join his unit in the front lines (Art. 99(5)) and the willful disobedience of the lawful order of a superior officer to join his unit in the front lines (Art. 90(2)). The offenses are separate because in the first instance the accused had a duty to be with his unit and in the second he had a duty to obey the order to join it.

When an accused is convicted of two or more offenses which are not separate, the maximum punishment for all of those offenses which merge is the maximum prescribed in the Table of Maximum Punishments for the one carrying the most severe punishment."

The general rule cited in the Manual provision set forth above was largely based on the so-called "Blockburger" Rule.[1]

In the past, the United States Court of Military Appeals has not always followed the general rule in this area.[2]

In *United States v. Beene, supra,* the Court considered the question of whether the offenses of involuntary manslaughter and drunken driving were multiplicious for sentence purposes. The Court held that they were not multiplicious saying that these two offenses are treated in different sections of the Uniform Code of Military Justice—Articles 111 and 119, respectively—a circumstance which suggests an intention on the part of the framers that different norms be established. The gravamen of the latter offense is the killing of one human being by another, the death having been brought about in a certain sort of way.[3] With regard to drunken driving,

---

1. In *Blockburger v. U. S.*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Supreme Court announced the test that crimes are severally punishable if each *requires proof of facts not demanded by the other.*

2. *See United States v. Burney*, 21 U.S.C.M.A. 71, 44 C.M.R. 125 (1971); *United States v. Kleinhans*, 14 U.S.C.M.A. 496, 34 C.M.R. 276 (1964); *United States v. Leach*, 5 U.S.C.M.A. 466, 18 C.M.R. 90 (1955); *United States v. Redenius*, 4 U.S.C.M.A. 161, 15 C.M.R. 161 (1954); *United States v. Beene*, 4 U.S.C.M.A. 177, 15 C.M.R. 177 (1954); *United States v. Davis*, 2 U.S.C.M.A. 505, 10 C.M.R. 3 (1953); *United States v. Larney*, 2 U.S.C.M.A. 563, 10 C.M.R. 61 (1953); *United States v. Soukup*, 2 U.S.C.M.A. 141, 7 C.M.R. 17 (1953), among others.

3. In *United States v. Parker*, 17 U.S.C.M.A. 545, 38 C.M.R. 343 (1968), a case involving two specifications of robbery which resulted from the single act, the Court rejected a claim that the two robbery specifications were multiplicious stating their approval of the general rule

the Court said the gravamen of the offense was wholly different from involuntary manslaughter in that the statute was regulatory in nature and designed to avoid injury to the person or property of others, the maintenance of free communication and movement over public roads untrammeled by the presence of drunken drivers and the natural fears attendant thereon. The Court further noted that with regard to the issue of injury, a conviction of drunken driving could be sustained without allegation, proof, or finding of injury and that its presence in a specification merely triggered an additional aggravating punishment factor. The same result must be applied in the case *sub judice*. Article 111 proscribes reckless driving as well as drunken driving and the gravamen of the offense of drunken driving set forth above is equally applicable to the offense of reckless driving.

■ For the foregoing reasons, we find that the offense of involuntary manslaughter is not multiplicious with the offense of reckless driving for punishment purposes. However, our inquiry does not end here. We must also determine whether the three specifications of reckless driving are each multiplicious with the other.

■ Applying the standard Manual test for multiplicity, we find that the evidence necessary to sustain the elements of the three offenses of reckless driving is identical with the exception of the named victims. As noted above, the allegation and proof of injury to a specific person merely triggers that portion of paragraph 127(a) of the Manual which authorizes additional punishment. In addition, we also note that by applying the test for a single integrated transaction[4] we find in the appellant's course of conduct, a similar combination of like objects and insistent flow of events. Accordingly, the three specifications of reckless driving are each multiplicious with the other.

■ The record reflects that the trial was conducted before a military judge sitting alone and that the issue of multiplicity was not raised in the record by counsel or the military judge. The military judge was a senior officer of many years experience on the bench. It may therefore be assumed that he considered the proper permissible maximum punishment when determining an appropriate sentence.[5]

■ The staff judge advocate advised the convening authority in both the pretrial advice and the post-trial review that the maximum punishment for the offenses charged was a dishonorable discharge, confinement at hard labor for six years, total forfeiture of pay, and reduction to the grade of Private E–1. This was error and we will test for prejudice.

The appellant was sentenced by the trial judge to a bad-conduct discharge, confinement at hard labor for nine months, and forfeiture of all pay and allowances. The staff judge advocate recommended, and the convening authority approved the sentence outlined in the heading above. The correct maximum permissible punishment was a dishonorable discharge, confinement at hard labor for four years, total forfeiture of pay, and reduction to the lowest enlisted grade. The sentence as reduced by the convening authority, was appropriate for the offenses of which the appellant was convicted and considerably less than the maximum which could have been adjudged and approved. In view of the foregoing, we do not find that there was a fair risk that the convening authority predicated his

cited in 22 C.J.S. Criminal Law 9(4) and 9(2), as follows: "Where an act or omission affects different persons, and the facts may vary as to the persons affected, the act or omission may form the basis of as many charges as there are victims. So, in crimes of violence, or against the person, a single act has been held to constitute a separate offense against each person injured by the act, although there may be but one intent." *See also United States v. Peterson*, 17 U.S.C.M.A. 548, 38 C.M.R. 346 (1968).

4. *See United States v. Burney*, 21 U.S.C.M.A. 71, 44 C.M.R. 125 (1971).

5. *United States v. Stein*, 20 U.S.C.M.A. 518, 43 C.M.R. 358 (1971); *United States v. Shoemaker*, 44 C.M.R. 319 (1971).

action upon the staff judge advocate's erroneous advice.[6] Therefore, we find no prejudice.

The other assignment of error has been considered and deemed to be without merit.

Accordingly, the findings and sentence are affirmed.

Senior Judge BAILEY and Judge COOK concur.

---

**6.** *United States v. DuPuis*, 48 C.M.R. 49 (1973); *United States v. MacDonald*, 46 C.M.R. 449 (1972).