**1020**

UNITED STATES

v.

Darin M. DRIVER, 486 60 1723, Hospital
Corpsman Third Class (E–4), U.S.
Navy.

NMCM 92 1215.

U.S. Navy–Marine Corps Court of
Military Review.

Sentence Adjudged 19 March 1992.

Decided 9 Feb. 1993.

MAJ G.S. Warner, USMC, Appellate Defense Counsel.

CAPT John H. Burson, JAGC, USNR, Appellate Defense Counsel.

LT E. Henriques, JAGC, USNR, Appellate Government Counsel.

Before LARSON, STRICKLAND and ORR, JJ.

ORR, Senior Judge:

Consistent with his pleas, the appellant was convicted of reckless driving resulting in injury to himself and of involuntary manslaughter in causing the death of the passenger in his car in violation, respectively, of Articles 111 and 119, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 911, 919. The military judge, sitting alone, sentenced the appellant to confinement for 2 years, forfeiture of all pay and allowances, reduction to pay grade E–1, and a bad-conduct discharge. A pretrial agreement had been concluded, but the only sentence limitation provided that the convening authority would suspend all confinement in excess of 24 months. Consequently, the convening authority approved the sentence as adjudged. Before this Court, the appellant assigns six errors.[1]

The appellant was involved in a motor vehicle accident while drag racing on a six-lane highway between Kadena Air Base and Camp Lester in Okinawa at 0930 on a Tuesday, an ordinary workday. According to the appellant, who had no independent recollection of the accident or events immediately preceding it and was relying upon the statements of witnesses, traffic was heavy and cars were "closely packed." The appellant and the driver of another vehicle were stopped at a red light when the decision to race was made, and by the

---

1. I. THE MILITARY JUDGE ERRED BY PERMITTING TRIAL COUNSEL TO INTRODUCE, IN THE FORM OF AN EXTRINSIC HEARSAY ACCIDENT REPORT, AND ARGUE UNCHARGED MISCONDUCT NOT CONSTITUTING AGGRAVATING CIRCUMSTANCES DIRECTLY RELATING TO, OR RESULTING FROM, THE OFFENSE TO WHICH APPELLANT PLEADED GUILTY.
II. THE OFFENSE SPECIFIED UNDER CHARGE II, RECKLESS DRIVING, IS NOT AGGRAVATED BY APPELLANT'S NEGLIGENT SELF-INJURY AND IS MULTIPLICIOUS FOR BOTH FINDINGS AND SENTENCING PURPOSES WITH THE OFFENSE SPECIFIED UNDER CHARGE III, INVOLUNTARY MANSLAUGHTER.
III. THE STAFF JUDGE ADVOCATE COMMITTED PLAIN ERROR BY RECOMMENDING THAT THE CONVENING AUTHORITY "NOT CONSIDER" CLEMENCY MATTERS SUBMITTED BY TRIAL DEFENSE COUNSEL ON APPELLANT'S BEHALF.
IV. A NONSUSPENDED BAD CONDUCT DISCHARGE AND CONFINEMENT FOR 24 MONTHS IS AN INAPPROPRIATELY SEVERE PUNISHMENT UNDER THE CIRCUMSTANCES IN APPELLANT'S CASE.
V. THE COURT–MARTIAL HAD NO JURISDICTION BECAUSE THE MILITARY JUDGE'S LACK OF A FIXED TERM OF OFFICE LEFT THE MILITARY JUDGE INSUFFICIENTLY INDEPENDENT TO SATISFY THE FIFTH AMENDMENT'S DUE PROCESS CLAUSE. *But see United States v. Graf*, 32 M.J. 809 (N.M.C.M.R.1990), *petition granted*, 34 M.J. 169 (C.M.A.1991). BECAUSE THE ERROR IS JURISDICTIONAL AND THE RECORD CONTAINS NO EVIDENCE OF A *KNOWING* WAIVER OF APPELLANT'S RIGHT TO AN INDEPENDENT MILITARY JUDGE, THE ISSUE IS NOT WAIVED EVEN THOUGH IT WAS NOT RAISED AT TRIAL. [Footnote omitted.]
VI. THE COURT–MARTIAL LACKED JURISDICTION BECAUSE APPELLANT'S MILITARY JUDGE WAS DESIGNATED IN VIOLATION OF THE APPOINTMENTS CLAUSE OF THE CONSTITUTION. *See generally* U.S. Const. Art. II, § 2, cl. 2; *Freytag v. Commissioner of Internal Revenue*, —— U.S. ——, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991); *but see United States v. Coffman*, 35 M.J. 591 (N.M.C.M.R.1992). BECAUSE THIS ERROR IS JURISDICTIONAL, THE ISSUE IS NOT WAIVED EVEN THOUGH IT WAS NOT RAISED AT TRIAL. [Footnote omitted.]

time the appellant and the other driver had caught up with the traffic ahead, they were going well in excess of the posted speed limit. While the other driver apparently slowed down, the appellant proceeded to try and weave his way through traffic but lost control of his car, struck the median, and careened into the oncoming traffic. The appellant's car struck two dump trucks and literally exploded into pieces. When the dust settled, the appellant was found under the wheels of one of the dump trucks with multiple fractures and other severe injuries and his passenger was found in a ditch alongside the highway on the verge of death. The passenger succumbed to his injuries shortly thereafter.

## I.

■ As part of his evidence in extenuation and mitigation, the appellant called two officers he had worked for and who had known him for some time. Both officers expressed the opinion that the appellant had rehabilitative potential. Record at 34, 37. In cross-examining both witnesses, the trial counsel asked them if their opinions concerning the appellant's rehabilitative potential would be affected if they were aware that the appellant was involved in a similar reckless driving incident before the one of which he had just been convicted. Record at 35, 37. Then during the appellant's unsworn statement, the following question and answer were stated:

> DC: Is this the type of conduct that the Navy can expect from you in the future?
>
> ACCUSED: Absolutely not. The accident that happened before was—it wasn't really relevant to this because I wasn't drag racing. I'll never, ever drag race again or drive recklessly, that is, even if I drive again.

Record at 42. In rebuttal, the trial counsel offered a copy of a Missouri Uniform Accident Report prepared by the St. Louis County Police Department concerning a motor vehicle accident involving the appellant on December 26, 1986, as Prosecution Exhibit (PE) 13. From that report, it appears that the appellant was issued citations for careless and imprudent operation of his vehicle and for a lane use violation, and from the reporting officer's description of the accident, the appellant had crossed into the oncoming lane of a two-lane highway after losing control of his vehicle and struck an oncoming car, causing injuries to a passenger in that other car. According to the report, the appellant stated he lost control of his car when he spilled a soda. The trial defense counsel objected to this item of evidence on relevancy grounds, and that objection was overruled. Record at 44.

The appellant now complains that PE 13 was improperly admitted for reasons other than relevancy (although he also argues that uncharged misconduct is irrelevant). The appellant, however, fails either to address why waiver does not apply or to otherwise identify what substantial right of the appellant's has been materially prejudiced by the military judge's ruling. *See* Mil.R.Evid. 103(a)(1). Consequently, except for relevancy grounds, the appellant's other possible objections were waived.

■ As to relevancy, the appellant put his rehabilitative potential in issue, and in so doing, prior instances of similar misconduct became relevant to test the basis of his witnesses' opinions concerning his potential for rehabilitation. *See United States v. Wingart,* 27 M.J. 128 (C.M.A. 1988). Extrinsic evidence of that misconduct is not admissible, however, to rebut an opinion as to an accused's rehabilitative potential. *Id.* Such evidence may become relevant and admissible, nevertheless, to rebut any statements of fact in an accused's unsworn statement. R.C.M. 1001(c)(2)(C); *United States v. Cleveland,* 29 M.J. 361 (C.M.A.1990). Rebuttal evidence may be used to explain, repel, counteract or disprove evidence introduced by the opposing party. *United States v. Wirth,* 18 M.J. 214 (C.M.A.1984). We conclude that the report did not tend to explain, repel, counteract or disprove any factual assertion by the appellant. As a result of that earlier accident, the appellant was cited for careless and imprudent driving—which connotes simple negligence and

not the culpable disregard of foreseeable consequences that constitutes reckless driving. *See* Manual for Courts–Martial, United States, 1984, (MCM), ¶ 35(c)(4). The momentary inattention reflected in the earlier accident does not reflect the more deliberate disregard for the potential risks evidence in the appellant's drag racing.

■ The Government contends that the appellant opened the door to this evidence by bringing his judgment and ability to learn from prior mistakes in issue and that the evidence of the earlier accident rebuts the appellant's assertion that he has the good judgment to learn from his mistakes, particularly where his reckless driving is concerned. As we have indicated, we think this argument incorrectly characterizes the nature of the earlier accident and the type of behavior that caused it. The mistakes were different, and the appellant's assertion that the earlier accident was not relevant was essentially accurate.

In addition, we find little to distinguish the appellant's representations about his future conduct (that he won't drag race or drive recklessly again) from such other unsworn statements as an accused thought he had served well but not perfectly, *see Cleveland*, 29 M.J. at 362, or an accused hoped "to continue out" his military career, *see United States v. Goree*, 34 M.J. 1027, 1028 (N.M.C.M.R.1992) (per curiam). *Cf. United States v. Hallum*, 31 M.J. 254 (C.M.A.1990) (affidavits from co-workers portraying accused as a good soldier may be rebutted by evidence of drug distributions by accused other than the one of which he was convicted); *United States v. Blake*, 30 M.J. 184 (C.M.A.1990) (accused's affidavit setting forth future value of his retired pay may be rebutted by affidavit setting forth future value of amount stolen by accused). Consequently, we conclude that PE 13 was not properly admitted as rebuttal evidence since it did not explain, counteract, repel or disprove any statement of fact introduced by the appellant.

■ Nevertheless, we are convinced from our review of the record and the circumstances of the appellant's offenses that a prior accident based on simple negligence would have had little impact on the sentence imposed for involuntary manslaughter and reckless driving, and we conclude that the error in the admission of the report of the earlier accident was harmless.

## II.

■ In his second assignment of error, the appellant points to the omission of any reference to reckless driving in the Analysis portion of the MCM when the aggravating element of injury, particularly injury to the accused, is discussed. The Analysis provides, in relevant part:

> The aggravating element of injury is listed as suggested by ... [the] MCM, 1969 (Rev.). The wording leaves it possible to plead and prove that the *accused* was injured as a result of the accused's drunken driving and so make available the higher maximum punishment. This result recognizes the interest of society in the accused's resulting unavailability or impairment for duty and the costs of medical treatment....

*Analysis*, ¶ 35b, App. 21, MCM, 1984, A21–93 to –94.

In the first place, we are not persuaded that the failure of the drafters of the Analysis to include the words "or reckless driving" in the second sentence of the portion quoted above was in any way intended to signal a limit on the otherwise unqualified reference to an increase in the maximum punishment for any violation of Article 111, UCMJ, when personal injury has occurred. MCM, 1984, ¶ 35e(1). In the second place, the rationale behind including the accused as a possible injured party in drunk driving offenses, i.e., the medical costs and the burden to society, applies with equal force to injuries from reckless driving. Lastly, the Analysis is merely the drafters' explanation of the derivation of each rule or paragraph of the MCM.

> The Analysis sets forth the nonbinding views of the drafters as to the basis for each rule or paragraph, as well as the intent of the drafters, particularly with respect to the purpose of substantial changes in present law. The Analysis is intended to be a guide in interpreta-

tion.... Users are reminded, however, that *primary reliance should be placed on the plain words of the rules.* In addition, it is important to remember that the Analysis solely represents the views of staff personnel who worked on the project, and does not necessarily reflect the views of the President in approving it, or of the officials who formally recommended approval to the President.

*Analysis,* App. 21, MCM, 1984, A21–3 (emphasis added).

■ As to the question of multiplicity, waiver also applies because no issue of either findings or sentence multiplicity was raised at trial. R.C.M. 905(e), 907(b)(3). In any event, because the two offenses involved different victims even though arising from the same accident, the offenses are not multiplicious for either findings, *cf. United States v. Anderson,* 25 M.J. 342 (C.M.A.1987) (drunk driving, which was alleged to have caused injury to the accused and his assistant driver, was not multiplicious with involuntary manslaughter where person outside the accused's vehicle was killed in the same accident); *United States v. Brett,* 25 M.J. 720 (A.C.M.R.1987) (negligent homicide involving death of one passenger was not multiplicious with drunken and reckless driving arising out of same accident where latter alleged injuries to other passengers), or sentence, *United States v. Mabry,* 2 M.J. 412 (A.C.M.R.1975); *United States v. Shephard,* 40 C.M.R. 579 (A.B.R.1969); *cf. United States v. Parker,* 17 C.M.A. 545, 38 C.M.R. 343 (1968) (robbery of two persons occurring at same time and place are separately punishable).

## III.

In the appellant's third assignment of error, the clemency matters he refers to are copies and a synopsis of four published opinions in other cases that involved offenses of reckless driving and involuntary manslaughter.[2] According to the appellant, the approved sentence in each of these four cases was, at most, half as severe as

the sentence adjudged against him. The staff judge advocate (SJA), however, recommended that the convening authority not consider those cases in taking his action on this case. In an addendum to his post-trial recommendation, the SJA stated:

The detailed defense counsel cites military cases to support his claim that ... [the appellant] received a disparate sentence. The cases are not related or closely connected to ... [the appellant]'s case. Accordingly, I recommend you not consider these cases when making your determination about an appropriate sentence in this case. Sentences approved in one case are rarely relevant in another. [The appellant] ... should be given individualized consideration based on the facts and circumstances surrounding his offense.

While conceding that it was error for the SJA to recommend that the convening authority not consider sentences in other cases when those other cases are submitted as part of an accused's clemency matters, *cf. United States v. Davis,* 33 M.J. 13 (C.M.A.1991) (construing "matters" under Article 60(b)(1), UCMJ, 10 U.S.C. § 860(b)(1), as including almost any item), the Government argues that the error was harmless. This latter assertion is based on both: (1) the contention that an examination of the four cases reveals that they have little relevance to and negligible value in evaluating the circumstances of the present case; and, (2) the factual assertion that the convening authority actually considered the four cases before taking his action on this case.

■ As to the relevance of the sentences in those four cases to the present case, highly disparate sentences in closely related cases should be considered in assessing the appropriateness of a particular sentence. *See United States v. Olinger,* 12 M.J. 458 (C.M.A.1982). The appellant, however, does not identify any "close relationship" between these four cases and his own except to point out that each accused

2. *United States v. Woods,* 26 M.J. 372 (C.M.A. 1988); *United States v. Cooke,* 18 M.J. 152 (C.M.A.1984); *United States v. Jordan,* 17 M.J. 528 (A.C.M.R.1983); *United States v. McMaster,* 15 M.J. 525 (A.C.M.R.1983).

was convicted of offenses under the same articles of the UCMJ stemming from their operation of a motor vehicle. There is no discussion of the factors that may have been considered in reaching the sentences adjudged or any indication of the disciplinary history, performance record, or other individualized aspect of the particular accused's character or history in any of those other four cases. From the brief factual summaries published, however, each included convictions for drunken driving as well as reckless driving and involuntary manslaughter. There was no indication at the time the appellant decided to race another automobile on a crowded highway that his judgment or faculties were in any way impaired by the ingestion of alcohol or any other intoxicating substance. Consequently, we agree that a mere comparison of adjudged sentences based solely on the same violations of the UCMJ has little relevance to the individualized consideration that should be given to determining an appropriate sentence in this case. In fact, in support of the next assignment of error, the appellant, himself, points out that his sentence should be evaluated by individual consideration of the particular accused. Appellant's Brief at 22 (citing *United States v. Snelling*, 14 M.J. 267 (C.M.A. 1982)).

Since the issue raised by the appellant concerns a matter of clemency, we should not substitute our judgment for the convening authority's in deciding how much or how little weight should be given such matters—even though we would conclude that the four cases submitted have little relevance or value in assessing a sentence in the case at hand. *See United States v. Spurlin*, 33 M.J. 443 (C.M.A.1991). As we have indicated, however, the Government avers that the convening authority didn't actually follow the advice of his SJA in this regard but *did* consider the four cases submitted by the appellant's trial defense counsel.[3] Although the Government does

not refer to it, that averment is supported by the convening authority's supplemental court-martial order of 1 June 1992,[4] in which he specifically states he considered the clemency matters, with its six enclosures, submitted by the defense counsel prior to taking his action. The four cases in question are four of those six enclosures. The appellant, on the other hand, does *not* aver that the convening authority failed to consider the four cases, but bases his assignment of error solely on the SJA's advice that the convening authority should *not* consider them. Consequently, we find that the convening authority did consider the four cases despite the advice of his staff judge advocation, and we conclude that the appellant has suffered no prejudice as a result of the SJA's advice on this issue.

### IV.

 We find an unsuspended bad-conduct discharge and confinement for 24 months to be appropriate punishments under the circumstances of this case.

### V.

The appellant's fifth and sixth assignments of error are also without merit. *See United States v. Graf*, 35 M.J. 450 (C.M.A. 1992); *United States v. Weiss*, 36 M.J. 224 (C.M.A.1992); *United States v. Coffman*, 35 M.J. 591 (N.M.C.M.R.1992) (per curiam).

Accordingly, the findings and sentence, as approved on review below, are affirmed.

Chief Judge LARSON and Senior Judge STRICKLAND concur.

---

3. The Government offers to obtain an affidavit to that effect if so ordered by this Court.

4. The supplemental order may lack efficacy as a modification of the original order once the initial order has been published, *see* R.C.M.

1107(f)(2), but it may still be considered a valid expression of what the convening authority would otherwise say if asked about the issue of what he did or did not consider in taking his action.